UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NAIN CASTELLANOS-LUNA,

               Petitioner,

   v.

MIKE POMPEO, et al.,

               Respondents.

CASE NO. C19-331-RSM-BAT

**REPORT AND
RECOMMENDATION**

## INTRODUCTION

Nain Castellanos-Luna, who is proceeding through counsel, seeks release from immigration detention in this 28 U.S.C. § 2241 habeas action.  He maintains he is entitled to release because there is no significant likelihood that he will be removed in the reasonably foreseeable future, and therefore his continued detention violates his due process rights.  Dkt. 1 at 19-22.  Mr. Castellanos-Luna also argues that the immigration judge ("IJ") erred in denying bond.  *Id.* at 23-30.

The Government has moved to dismiss, arguing that Mr. Castellanos-Luna is lawfully detained and that his bond hearings comported with the requirements of due process.  Dkt. 4.  Mr. Castellanos-Luna opposes dismissal.  Dkt. 8.  As discussed below, the Court recommends that both the Government's motion to dismiss and Mr. Castellanos-Luna's habeas petition be

REPORT AND RECOMMENDATION - 1

1  **GRANTED** in part and **DENIED** in part.  Specifically, Mr. Castellanos-Luna is not entitled to

2  immediate release but should be afforded a new bond hearing.

3                                          **BACKGROUND**

4  **A.    Immigration history**

5         Mr. Castellanos-Luna is a native and citizen of Mexico who first came to the United

6  States in 1991.  Dkt. 1 at 1; Dkt. 8-1 at 13.  In late 2010, he returned to Mexico to visit his dying

7  mother.  Dkt. 1 at 1-2, 10; Dkt. 8-1 at 13.  On January 11, 2011, he applied for admission to the

8  United States but was issued a Notice and Order of Expedited Removal based on

9  misrepresentations he made to U.S. Customs and Boarder Protection ("CBP") officers.  Dkt. 6 at

10  ¶ 4; Dkt. 7-2 at 5-6.  He was removed the following day.  Dkt. 7-2 at 5.  On January 17, 2011, he

11  again attempted to return to the United States but was arrested and subsequently removed

12  pursuant to a second Notice and Order of Expedited Removal.  Dkt. 6 at ¶ 4; Dkt. 7-2 at 4.  In

13  February 2011, the Gulf Cartel kidnapped Mr. Castellanos-Luna and held him for over two

14  weeks, during which time he was tortured and starved.  Dkt. 8-1 at 13.  He was released after his

15  partner paid ransom requests.  *Id.*  On March 3, 2011, Mr. Castellanos-Luna attempted to return

16  to the United States a third time and was arrested, his earlier removal order was reinstated, and

17  he was promptly removed.  Dkt. 6 at ¶ 4; Dkt. 7-2 at 3.  During his short detention, he told the

18  CBP officers about his kidnapping and torture, but they did not refer him for a reasonable fear

19  interview.  Dkt. 8-3 at 17.  In June 2011, Mr. Castellanos-Luna was able to make his way back

20  into the United States.  Dkt. 8-1 at 13.  During his absence, his partner had given birth to their

21  son, who has had significant health challenges over the years.  *See id.*; Dkt. 8-2 at 32, 35-240.

22  **B.    Current immigration proceedings**

23         On February 14, 2018, U.S. Immigration and Customs Enforcement ("ICE") officers

REPORT AND RECOMMENDATION - 2

1    arrested Mr. Castellanos-Luna at his home in Mountlake Terrace, Washington, and transferred

2    him to the Northwest Detention Center.  Dkt. 6 at ¶ 6; Dkt. 7-1.  ICE issued a Notice of

3    Intent/Decision to Reinstate Prior Order.  Dkt. 7-2 at 2.  Mr. Castellanos-Luna expressed a fear

4    of return to Mexico, and an asylum officer determined that his fear of torture was reasonable.

5    Dkt. 6 at ¶ 7.  On February 28, 2018, Mr. Castellanos-Luna was placed in withholding only

6    proceedings.  *Id.* at ¶ 8.  On July 25, 2018, an IJ held a hearing on Mr. Castellanos-Luna's

7    application for withholding of removal, denied his applications for relief from removal, and

8    reinstated his removal order to Mexico.  *Id.* at ¶ 9; Dkt. 7-3.  The Board of Immigration Appeals

9    ("BIA") dismissed Mr. Castellanos-Luna's appeal.  Dkt. 6 at ¶ 13.  Mr. Castellanos-Luna filed a

10   motion for reconsideration with the BIA and a petition for review with the Ninth Circuit.  *Id.* at ¶

11   15; Dkt. 1 at 2.  The Ninth Circuit temporarily stayed his removal, and his petition for review

12   remains pending.  Dkt. 6 at ¶ 15.

13   **C.      Bond hearings**

14           Since Mr. Castellanos-Luna's February 14, 2018 arrest, he has received two bond

15   hearings pursuant to *Martinez-Baños v. Asher*, No. 16-1454, 2018 WL 1617706, at *1 - *2 (W.D.

16   Wash. Apr. 4, 2018), *adopting R & R*, 2018 WL 3244988 (Jan. 23, 2018) (holding that detained

17   noncitizens who are subject to reinstated removal orders and are in withholding only proceedings

18   are entitled to bond hearings every 180 days).  Following the first hearing on August 21, 2018,

19   the IJ denied bond based on the finding that Mr. Castellanos-Luna presents a flight risk.  Dkt. 6

20   at ¶ 11; Dkts. 7-7, 7-8.  In her written decision, the IJ stated that the bond hearing was held

21   pursuant to *Martinez-Baños* and that the U.S. Department of Homeland Security ("DHS") had

22   the burden to demonstrate that continued detention was warranted.  Dkt. 7-8 at 2.  The IJ set

23   forth the discretionary factors from *In re Guerra*, 24 I & N Dec. 37, 40 (BIA 2006), which are

1  relevant to determining whether to release a noncitizen on bond.  Dkt. 7-8 at 2.  The IJ then

2  summarized DHS's evidence, including Mr. Castellanos-Luna's "significant immigration

3  history," the denial of his application for withholding of removal, and an October 2000 arrest for

4  Fail to Comply/Theft, which was later dismissed.  *Id.* at 3-4.  The IJ also summarized Mr.

5  Castellanos-Luna's evidence, noting that he has lived in the United States "off and on" since

6  1991, when he reentered the United States he did not apply for protection from the government,

7  he has family in the United States but no one who can confer any immigration benefit upon him,

8  his partner has no immigration status, his partner and U.S. citizen child have significant health

9  issues, and his child is experiencing stress due to separation from his father.  *Id.*  The IJ further

10  noted that Mr. Castellanos-Luna submitted documents relevant to employment, community ties,

11  and health conditions.  *Id.*  The IJ ultimately ruled:

> The court does find that DHS established that applicant is a flight risk based on
> his multiple unlawful entries, reentries, and removals from the United States.  He
> is subject to an order of removal.  The sole purpose of the hearing is for the
> applications for protection.  The applications were denied.  The Court finds
> applicant is an extreme flight risk.  The court does not find that release on
> conditions are appropriate and has no confidence applicant would comply.

*Id.* at 4.  Mr. Castellanos-Luna appealed, and the BIA dismissed his appeal.  Dkt. 6 at ¶¶ 12, 14.

Mr. Castellanos-Luna's second bond hearing took place on March 4, 2019.  *Id.* at ¶ 17.

The IJ again denied bond based on flight risk.  *Id.*; Dkt. 7-9.  Based on the record before the

Court, it appears that Mr. Castellanos-Luna did not appeal this determination.

## DISCUSSION

**A.    Mr. Castellanos-Luna's detention is statutorily authorized**

Mr. Castellanos-Luna is subject to a reinstated removal order and is in withholding only

1  proceedings.[1]  Thus, his detention is governed by 8 U.S.C. § 1231(a).  *See Padilla-Ramirez v.*

2  *Bible*, 882 F.3d 826, 832 (9th Cir. 2017) (holding that § 1231(a) authorizes detention of

3  noncitizens who are subject to reinstated removal orders and have applied for withholding of

4  removal).  "Section 1231(a) provides for mandatory detention during a ninety-day 'removal

5  period,' *id.* § 1231(a)(2), and discretionary detention 'beyond the removal period' in certain

6  circumstances, *id.* § 1231(a)(6)."  *Padilla-Ramirez*, 882 F.3d at 829.  Because Mr. Castellanos-

7  Luna's removal period has expired, he is detained under § 1231(a)(6).

8         Relying on the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001), Mr.

9  Castellanos-Luna argues that he is entitled to release because there is no significant likelihood

10  that he will be removed in the reasonably foreseeable future.  Dkt. 1 at 19-22; Dkt. 8 at 2-3.  In

11  *Zadvydas*, the Supreme Court held that § 1231(a)(6) implicitly limits a noncitizen's detention to

12  a period reasonably necessary to bring about that individual's removal from the United States,

13  and does not permit "indefinite" detention.  533 U.S. at 701.  The Supreme Court determined that

14  it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of

15  a final removal order while it works to remove the individual from the United States.  *Id.*  "After

16  this 6-month period, once the [noncitizen] provides good reason to believe that there is no

17  significant likelihood of removal in the reasonably foreseeable future, the Government must

18  respond with evidence sufficient to rebut that showing."  *Id.*  If the Government fails to rebut the

19

20  [1] If a noncitizen who is removed pursuant to a removal order subsequently reenters the United States illegally, DHS
    may reinstate the original removal order.  *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 487 (9th Cir. 2007) (en

21  banc); 8 C.F.R. § 241.8.  A reinstated removal order is not subject to being reopened or reviewed and in most cases
    results in the noncitizen being removed without delay.  *See* 8 U.S.C. § 1231(a)(5).  There is one exception.  When a
    noncitizen expresses a fear of return to his or her home country and an asylum officer finds this fear to be

22  reasonable, the noncitizen is permitted to apply for withholding of removal.  *Ortiz-Alfaro v. Holder*, 694 F.3d 955,
    956 (9th Cir. 2012); 8 C.F.R. § 208.31(e).  The IJ's decision to grant or deny withholding of removal may

23  be appealed to the BIA.  8 C.F.R. § 208.31(g)(2)(ii).  Judicial review of the BIA's determination is available in the
    Court of Appeals.  *See Ortiz-Alfaro*, 694 F.3d at 958-60.  While withholding only proceedings are pending before
    the IJ or the BIA, DHS cannot execute a reinstated removal order.  *See id.* at 957; 8 U.S.C. § 1231(b)(3).

REPORT AND RECOMMENDATION - 5

1    noncitizen's showing, the noncitizen is entitled to habeas relief.  *Id.*

2         The six-month presumption "does not mean that every [noncitizen] not removed must be

3    released after six months.  To the contrary, [a noncitizen] may be held in confinement until it has

4    been determined that there is no significant likelihood of removal in the reasonably foreseeable

5    future."  *Id.*  Nevertheless, courts must remember "as the period of prior postremoval

6    confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to

7    shrink."  *Id.*

8         Mr. Castellanos-Luna argues that there is no significant likelihood of removal in the

9    reasonably foreseeable future because he is engaged in the lengthy process of seeking judicial

10   review of the IJ's denial of his application for withholding of removal.  *See* Dkt. 8 at 3.  As the

11   Ninth Circuit has explained, however, the fact that Mr. Castellanos-Luna's detention does not

12   have a certain end date does not mean that it is indefinite.  *See Prieto-Romero v. Clark*, 534 F.3d

13   1053, 1062-65 (9th Cir. 2008).  Rather, the question is whether Mr. Castellanos-Luna is capable

14   of being removed if and when the withholding only proceedings are finalized.  *See id.* at 1065.

15   There is no indication in the record that the Government will be unable to remove Mr.

16   Castellanos-Luna if he loses his legal challenges to enforcement of his reinstated removal order,

17   and therefore his detention is not indefinite.  Mr. Castellanos-Luna is not entitled to relief under

18   *Zadvydas*.

19   **B.    Clear and convincing evidence does not support the IJ's denial of bond**

20        Mr. Castellanos-Luna also challenges the IJ's denial of bond.  In *Diouf v. Napolitano*

21   ("*Diouf II*"), 634 F.3d 1081 (9th Cir. 2011), the Ninth Circuit held that "an individual facing

22   prolonged immigration detention under 8 U.S.C. § 1231(a)(6) is entitled to release on bond

23   unless the government establishes that he is a flight risk or a danger to the community."  *Id.* at

1  1082.  Specifically, the court held that the government must provide a custody hearing before an

2  IJ to noncitizens who are denied release in their six-month DHS custody reviews and whose

3  release or removal is not imminent.  *Id.* at 1091-92 ("When detention crosses the six-month

4  threshold and release or removal is not imminent, the private interests at stake are profound.

5  Furthermore, the risk of an erroneous deprivation of liberty in the absence of a hearing before a

6  neutral decisionmaker is substantial."); *see also id.* at 1092 n.13 ("As a general matter, detention

7  is prolonged when it has lasted six months and is expected to continue more than minimally

8  beyond six months.").

9          In *Martinez- Baños*, the Honorable James L. Robart relied on *Diouf II* to hold that

10  noncitizens subject to reinstated removal orders who have applied for withholding of removal are

11  entitled to automatic custody hearings every six months.  2018 WL 1617706, at *1 - *2.  Such

12  hearings must comply with the procedural safeguards established in *Singh v. Holder*, 638 F.3d

13  1196 (9th Cir. 2011), including that the government must justify continued detention by clear

14  and convincing evidence.  *Martinez- Baños*, 2018 WL 3244988, at *5 (R & R).  To make this

15  determination, the IJ may consider any number of discretionary factors, including:  (1) whether

16  the detainee has a fixed address in the United States; (2) the detainee's length of residence in the

17  United States; (3) the detainee's family ties in the United States, and whether they may entitle

18  the detainee to reside permanently in the United States in the future; (4) the detainee's

19  employment history; (5) the detainee's record of appearance in court; (6) the detainee's criminal

20  record, including the extensiveness of criminal activity, the recency of such activity, and the

21  seriousness of the offenses; (7) the detainee's history of immigration violations; (8) any attempts

22  by the detainee to flee persecution or otherwise escape authorities; and (9) the detainee's manner

23  of entry to the United States.  *In re Guerra*, 20 I. & N. Dec. at 40; *see also Singh*, 638 F.3d at

1    1206.

2          As noted above, DHS provided Mr. Castellanos-Luna with *Martinez-Baños* bond

3    hearings on August 21, 2018, and March 4, 2019.  Mr. Castellanos-Luna's habeas petition raises

4    two primary challenges to the bond determinations.[2]  *See* Dkt. 1 at 23-30.  First, he argues that

5    the IJ abused her discretion in weighing the *In re Guerra* factors and finding that he was a flight

6    risk.  *Id.* at 23-24.  As the Government argues, however, the Court does not have jurisdiction to

7    review an IJ's discretionary judgment, *see* 8 U.S.C. § 1226(e), and therefore the Court cannot

8    consider these claims.

9          Second, Mr. Castellanos-Luna argues that DHS failed to present sufficient evidence to

10   satisfy the clear and convincing evidence standard.  Dkt. 1 at 24, 28.  Because this argument

11   raises a legal challenge to the bond hearing, the Court has jurisdiction to consider it.  *See Singh*,

12   638 F.3d at 1202 (federal district courts have habeas jurisdiction to review bond hearing

13   determinations for constitutional claims and legal error); *Calderon-Rodriguez v. Wilcox*, --- F.

14   Supp. 3d ----, 2019 WL 486409 (W.D. Wash. Feb. 7, 2019) (considering immigration habeas

15   petitioner's claim that there was insufficient evidence in the record to satisfy the clear and

16   convincing evidence standard).[3]

17         "The clear and convincing evidence standard is a high burden and must be demonstrated

18   in fact."  *Ramos v. Sessions* ("*Ramos II*"), 293 F. Supp. 3d 1021, 1030 (N.D. Cal. 2018), *appeal*

19

20   [2] In his opposition to the Government's motion to dismiss, Mr. Castellanos-Luna raises a third issue that he did not
     include in his habeas petition.  He argues that the bond hearings violated his due process rights because the IJ did
21   not expressly state that she was applying the clear and convincing evidence standard.  Dkt. 8 at 4.  The Government
     contends that the Court cannot consider the issue because Mr. Castellanos-Luna did not raise it in his habeas
22   petition.  Dkt. 9 at 2.  But even if the issue were properly before the Court, it fails.  The IJ noted that she was
     conducting *Martinez-Baños* bond hearings, *see* Dkt. 7-7 at 2; Dkt. 7-8 at 2, thereby impliedly recognizing that the
23   clear and convincing evidence standard applied.

     [3] The current version of *Calderon-Rodriguez* in Westlaw does not have page numbers and thus the Court cannot
     provide pin cites.

REPORT AND RECOMMENDATION - 8

1    *docketed*, No. 18-15884 (9th Cir.) (quotation and citation omitted).  The Ninth Circuit has not

2    provided guidance "on precisely what standard of review a district court should apply in

3    reviewing an IJ's application of the clear and convincing evidence standard of proof."  *Id.*  In

4    *Ramos II*, the court undertook an extensive discussion of the appropriate standard of review,

5    including reviewing numerous district court decisions from within the Ninth Circuit.  Ultimately,

6    the court concluded that it "reviews the IJ's factual findings for clear error, and independently

7    reviews the facts, findings, and record to determine, *de novo*, whether those facts clearly and

8    convincingly demonstrate that [the petitioner] poses such a danger to the community [or flight

9    risk] that [he or she] must remain detained, including because no alternative to detention could

10   protect the community [or prevent flight]."  *Id.* at 1032-33.  The Court agrees with *Ramos II*'s

11   analysis and adopts this standard of review.  *See Calderon-Rodriguez*, 2019 WL 486409

12   (adopting standard of review in *Ramos II*).

13          As noted above, the IJ based her flight risk finding on Mr. Castellanos-Luna's multiple

14   unlawful entries and removals from the United States, and the denial of his application for

15   withholding of removal.  Dkt. 7-8 at 4.  She also denied release on conditions because she had

16   "no confidence [Mr. Castellanos-Luna] would comply."  *Id.*

17          In *Singh*, the Ninth Circuit considered whether the fact that the petitioner was subject to

18   an administratively final order of removal—a fact common to all detainees who have been

19   ordered removed—was sufficient to deny bond based on flight risk.  638 F.3d at 1205.  The court

20   concluded that although this was a "relevant factor in the calculus, it alone [did] not constitute

21   clear and convincing evidence" justifying denial of bond.  Like the petitioner in *Singh*, Mr.

22   Castellanos-Luna is subject to an administratively final order of removal and his request for

23   relief from removal has been denied by the IJ and BIA.  Under *Singh*, this alone is insufficient to

1    justify the denial of bond.  Although Mr. Castellanos-Luna also has unlawfully entered the

2    country multiple times, the Court concludes that this too is insufficient to satisfy the clear and

3    convincing evidence standard when considering the additional evidence in the record and the

4    available conditions of supervision that may be imposed.  *Cf. Sales v. Johnson*, No. 16-1745,

5    2017 WL 6855827, at *5 (N.D. Cal. Sept. 20, 2017) (as a matter of law, IJ's flight risk finding

6    was not supported by clear and convincing evidence where the detainee owned no assets or

7    property in the United States, had been ordered removed by both the IJ and BIA, had no

8    incentive to report for removal because of his family ties in the United States, and desired to

9    remain in the United States).

10          Mr. Castellanos-Luna has significant reason not to flee if he is released.  He and his

11    family have lived in the same house in Mountlake Terrace since 2009.  Dkt. 8-1 at 15, 34.  He

12    testified that he was intent on returning to the United Sates in 2011 in part because his partner

13    was pregnant and then gave birth to their son.  Dkt. 8-1 at 13.  His family needs him to help care

14    and provide for them.  *See id.* at 13-15.  Both his wife and son have health challenges.  *See id.* at

15    13-15; Dkt. 8-2 at 32, 35-240.  According to his son's long-term health care provider, Mr.

16    Castellanos-Luna is a "devoted" father and his son has been "very withdrawn and depressed" and

17    "extremely stressed by the absence of his father."  *Id.* at 32; *see also* Dkt. 8-3 at 39.  There is

18    additional evidence in the record regarding Mr. Castellanos-Luna's strong family and community

19    ties in the Seattle area and consistent employment.  *See generally* Dkts. 8-1, 8-2, 8-3.

20          In addition, the IJ did not explain why she had "no confidence" that Mr. Castellanos-

21    Luna would not comply if released on conditions, particularly ankle monitoring.  The IJ who

22    ruled on the merits of his withholding only proceedings found that he was a credible witness.

23    Dkt. 7-4 at 3.  Mr. Castellanos-Luna has declared that he will fight his case as long as necessary

1   but will depart the United States if he loses his appeal.  Dkt. 8-3 at 17-18.  Mr. Castellanos-Luna

2   has never been convicted of any crimes.  His illegal reentries occurred in 2011 and he has lived

3   in the same house with his family since then.  The Court is not convinced that appropriate

4   conditions of release would be ineffective in ensuring his appearance at future immigration

5   proceedings or at the time of removal if that is the ultimate outcome.

6          In sum, having independently reviewed the record, *see Ramos II*, 293 F. Supp. 3d at

7   1032-33, the Court concludes that there is insufficient evidence to support the IJ's denial of bond

8   under the clear and convincing evidence standard.  Although Mr. Castellanos-Luna asks the

9   Court to order that he be immediately released, the Court concludes that the appropriate remedy

10  is to order the Government to release him on bond and/or appropriate conditions unless he is

11  provided with a constitutionally sufficient bond hearing within 30 days of the order on the

12  Report and Recommendation.  This bond hearing must comply with all procedural requirements

13  set forth in *Martinez-Baños* and *Singh*.

## CONCLUSION AND RIGHT TO OBJECT

14

15         The Court recommends that both Mr. Castellanos-Luna's habeas petition, Dkt. 1, and the

16  Government's motion to dismiss, Dkt. 4, be **GRANTED** in part and **DENIED** in part, and that

17  Mr. Castellanos-Luna be released on bond and/or appropriate conditions unless, within 30 days

18  of the order on this Report and Recommendation, the Government is able to justify his continued

19  detention by clear and convincing evidence at a constitutionally sufficient bond hearing that

20  comports with the procedural requirements of *Martinez-Baños* and *Singh*.  A proposed order

21  accompanies this Report and Recommendation.

22

23

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **June 19, 2019.** The Clerk should note the matter for **June 21, 2019**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed five pages. The failure to timely object may affect the right to appeal.

DATED this 4th day of June, 2019.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 12